# Hay *against* Mayer.

Where one has both a power to sell and an interest in land, and he makes a sale and conveyance generally, without reference to his power, it shall be deemed and taken that the land passed by virtue of his ownership, and not in execution of his power. And this although his ownership was of but a part, and his power was over the whole.

H. devised his estate to his daughter M. in fee-tail, and in the event of her death without issue, to his executors, to be sold. M. was afterwards married to C., and had issue, which died in her lifetime; C. survived her, and was entitled to the estate by the curtesy: *Held*, that during the lifetime of C. the executors had no power to sell, even with his consent. When executors have power to sell at a particular time, or upon the happening of a particular event, they have no power to sell until that arrives, or the contingency happens.

A power of attorney " to ask, demand, &c., his lawful part of the estate of H., giving and granting to his said attorney, his sole and full power to take, pursue, and follow, such legal course for the recovery, and obtaining the same as he himself might or could do, and upon receipt thereof, acquittances and other sufficient discharges for him and in his name, to sign, seal, and deliver," &c., will not authorise the attorney to sell and convey real estate.

ERROR to the common pleas of *Dauphin* county.

Andrew S. Morrison, administrator *de bonis non cum testamento annexo* of Hugh Hay, deceased, against George Mayer and others, tenants in possession.

This was an action of ejectment for three hundred and forty-one acres of land, and was brought to enforce the payment of a legacy under the will of Hugh Hay, deceased, on the following facts, which were found as a special verdict:

" Hugh Hay, of Derry township, Lancaster county, (now Dauphin

county,) died, seized in fee simple of the land for which this suit is brought, in the year 1777, which tract of land is situated in the same township, and contains three hundred and forty-one acres sixty-three perches: That said Hugh Hay made his last will and testament, dated 24th of May 1777, which was duly proved on the 4th day of May 1789, in the office of the register of Lancaster county. The executors named in the will of Hugh Hay, renounced, and letters of administration with the will annexed, were issued to Mary Hay, his widow, and Archibald M'Allister, dated 15th of May 1779. That said Hugh Hay left a widow, the said Mary, and issue, a daughter named Margaret, who in the year 1777, after the death of her father, intermarried with Archibald M'Allister, aforesaid, and died in the year 1778, having had issue born alive, who died in the lifetime of the said Margaret. The said Archibald M'Allister lived till the 28th of February, 1831. Mary Hay, the widow of said Hugh Hay, afterwards intermarried with William M'Alevy, and died in the year 1793. Patrick Hay, the brother of said Hugh Hay, had two sons, William and Hugh Hay; Rebecca Buchanan, the sister of said Hugh Hay, had one son, James Buchanan, and Margaret Morrison, the other sister of said Hugh Hay, had four sons, named Hugh, Andrew, William and Patrick Morrison. The defendants produced a patent from the commonwealth to Hugh Hay, dated 12th of August 1743, for the land in question, and the following deeds of conveyance and other instruments, viz.,—a deed from Patrick Hay, the brother of said Hugh Hay, to James Buchanan, dated 19th of October 1779, recorded 16th of November, 1785, in the office of the recorder of deeds of Dauphin county, in deed book A, vol. i, p. 176; a deed from William Hay, a son of Patrick Hay, to said James Buchanan, dated 14th October 1779, recorded in same office, 16th November 1785, in book A, vol. i, p. 174; a deed from Hugh Hay, the other son of Patrick Hay, dated 19th October 1779, to said James Buchanan, recorded in same office, 16th November 1785, in book A, vol. i, p. 175; a deed from Hugh, Andrew, and William Morrison, three of the sons of said Margaret Morrison, to said James Buchanan, dated 7th December 1779, recorded 16th November 1785, in same office, in deed book A, vol. i, p. 176; a power of attorney from Patrick Morrison, the other son of said Margaret Morrison, to said James Buchanan, dated 21st June 1780, recorded in same office, 16th November 1785, in deed book A, vol. i, p. 178; a deed of release from said William M'Alevy and wife, to Archibald M'Allister, dated 2d March 1785, recorded in the office of the recorder of deeds of Lancaster county, 3d March 1785, in deed book C. C., p. 52; a deed from said James Buchanan to John Duffee Hay, dated 25th February 1793, for the moiety of said land, recorded 29th August 1798, in the office of the recorder of deeds of Dauphin county aforesaid, in deed book K, vol. i, p. 374; a letter of attorney from said John Duffee Hay to William Hay, dated 4th July 1799, record-

ed in same office 21st March, 1805, in book A, vol. i, p. 702; and deed from said John Duffee Hay, by his attorney in fact, William Hay, to Peter Gloninger, dated 26th March 1805; a deed from Peter Gloninger to William Coleman, dated 28th December 1812, for same moiety; also, a deed from said James Buchanan to Archibald M'Allister, dated 17th December, 1804, for the other moiety of said land recorded in same office on the 5th January 1805, in book N, vol. i, p. 650; a deed from said Archibald M'Allister to Robert Coleman, dated 10th April 1805, recorded in same office, 18th April, 1805, in deed book O, vol. i, p. 1; a deed from said Robert Coleman and William Coleman, to Christian Hoffman, dated 1st April 1814, for the whole tract of land aforesaid; a mortgage from said Christian Hoffman to said Robert and William Coleman dated 1st May 1821, recorded in same office, 2d May 1831, in mortgage book G, vol. i, p. 409; a deed from said Christian Hoffman to Robert Coleman and William Coleman aforesaid, dated 7th April 1825; a deed from Joseph Hemphill and wife, William Coleman, Elizabeth Hall, James Coleman, Edward Coleman, and Sarah H. Coleman, heirs of Robert Coleman, then deceased, to Thomas Bird Coleman, dated 22d October 1825; also, a deed from said Christian Hoffman, dated 26th February 1823, to John Hoffman; and deed from John Hoffman to John Steel, dated 2d December 1825; and deed from said John Steel to said Thomas B. Coleman, dated 16th January 1826, recorded 8th May 1827, in the recorder's office of Dauphin county, in deed book A, vol. ii, p. 437.

"Archibald M'Allister, aforesaid, held the possession of the land in question, from the death of his wife in 1778 to the 10th of April 1805, when he delivered the possession to Robert Coleman, with his deed beforementioned, and the possession afterwards passed to and was held by the several purchasers according to the deeds to them respectively before recited. Thomas Bird Coleman, the last purchaser, died in possession of said land on the 6th of September 1836, intestate, leaving issue six children, who are now minors, and have for their guardian John Reynolds, who now holds the possession of said land, and said John Reynolds, as guardian as aforesaid, has made himself a co-defendant as landlord in this suit. Letters of administration with the will annexed, *de bonis non*, were issued to Andrew S. Morrison, the plaintiff, on the estate of said Hugh Hay, deceased, dated the 16th of May 1836, from the register of Lancaster county; Mary Hay and Archibald M'Allister, administrators of said Hugh Hay, deceased, exhibited an inventory of the personal estate of said Hugh Hay, deceased, into the register office of Lancaster county, on the 15th of May 1779. John Hoffman, during the time he held a part of said land, erected thereon a two story brick house and large stone barn, which cost 4000 dollars; and Thomas Bird Coleman, after his purchase from Christian Hoffman, cut down on said land, and used wood supposed to be of the same value. All deeds, wills, and powers of attorney herein

VIII.—s*

[Hay v. Mayer.]

specified or referred to, are considered for the purposes of this suit, as having been properly executed, acknowledged, and delivered at the times they respectively bear date, and that they shall, together with all letters of administration and other writings herein referred to, form a part of this case.

" If, in the opinion of the court, on the foregoing case, the plaintiff shall be entitled to recover, judgment shall be entered for him to be released on payment by defendants, of three thousand one hundred and seventy dollars, with or without interest on the same, from the death of Archibald M'Allister, or on payment of any less sum, rating the land at sixty-five dollars per acre, with or without interest as aforesaid, as the court shall determine; and, if judgment shall be rendered for plaintiff, he shall execute and deliver a deed of release to defendants for said land on the payment of said money."

The court below rendered a judgment for the one-half of Patrick Morrison's legacy (1585 dollars, with interest from the 12th of May 1832) and assigned the following reasons:

" Judgment was entered for the plaintiff on the case stated for one-half his claim, on the ground that Archibald M'Allister, when he conveyed the moiety of the remainder in fee, although he supposed he had acquired from Buchanan an interest to that extent, yet in fact had acquired from Buchanan no interest in the estate conveyed; but M'Allister had power as surviving administrator, with the will annexed of Hugh Hay, deceased, to convey the whole estate in remainder, and he intended by his conveyance to transfer to his grantee the moiety of the remainder in fee. He, however, mistook the source from which he derived authority to transfer that moiety; but inasmuch as he had power to make a valid conveyance of the estate he undertook to convey, for conveying which he received a valuable consideration, his conveyance shall be held effectual notwithstanding his misapprehension with regard to the source from which his right to make the conveyance was derived. The legatee whose claim remains unsatisfied, must look to M'Allister or to Buchanan, whom he empowered to receive from M'Allister his legacy, for the moiety which M'Allister raised by sale of the moiety of the remainder in fee, and which he paid or might have paid to Buchanan on his power of attorney from Patrick Morrison."

" With regard to the remaining half of Patrick Morrison's legacy, there does not appear to be any bar to the plaintiff raising it out of the land. The presumption of payment does not arise because the land was not sold. The executors were not bound to sell during the continuance of the life estate. The legatees had a right to take their chance of its continuance, without being compelled to submit to a sacrifice by sale of the remainder. Plaintiff is not barred by twenty-one years' adverse possession, because he had no right to demand possession during the continuance of the life estate, which has only terminated within seven years."

The only part of the will of Hugh Hay, deceased, which is material, is as follows:

" Item. I bequeath to my dear daughter, Margaret, all the residue of my personal estate, and the whole of my real estate to her, to her heirs and assigns forever."

" Item. I order that my said daughter be directed in every thing by my executors, and that she be subject, from time to time, to their advice and counsel."

" Item. I order, that if it please God that my daughter should die without issue, my whole estate be sold by my executors, and that the money arising from said sale, shall, after the decease of my dear widow, and said executors being satisfied for their trouble, be equally divided among my brother Patrick's and my sisters Buchanan, and Morrison's sons, share and share alike."

" Item. I bequeath to my brother Patrick's son, Hugh Hay, all my wearing apparel, save only my best hat and greatcoat, which I bequeath to my daughter."

" Item. I constitute and appoint my dear wife, John Killerest, Sen., of Paxton, and Richard Crawford, of Hanover, the sole and only executors of this my last will and testament, confiding in their fidelity and prudence to order, manage, and dispose of my goods and estate agreeably to the directions of this my said will, disallowing, renouncing, and revoking all other wills, legacies, bequests or executors, by me in any wise heretofore made, ordained, bequeathed or appointed, publishing, pronouncing and declaring this, and none other, to be my last will and testameut. In testimony of all which I have hereunto subscribed my name and affixed my seal, the day and year before written."

Power of attorney, Patrick Morrison to James Buchanan.

" Know all men by these presents, that I, Patrick Morrison, of the county of Washington, and commonwealth of Virginia, for divers considerations and good causes me hereunto moving, having made, ordained, constituted and appointed, and by these presents, do make, ordain, constitute and appoint my trusty friend, James Buchanan, of the county of Rock Bridge and said commonwealth of Virginia, my true and lawful attorney for me, and in my name, and to my use, to ask, demand, recover, or receive my lawful part of the estate of Hugh Hay, deceased, of the county of Lancaster, in the state of Pennsylvania, giving, and by these presents, granting to my said attorney, my sole and full power and authority to take, pursue, and follow such legal courses for the recovery, receiving, and obtaining the same, as I myself might or would do, were I personally present, and upon the receipt of the same acquittances, and other sufficient discharges for me and in my name, to sign, seal, and deliver, as I, the said Patrick Morrison, in my own person, ought or could do, in and about the same, ratifying, allowing, and confirming whatsoever my said attorney shall lawfully do, in and about the execution of the premises, by virtue of these pre-

sents.   In witness whereof, I have hereunto set my hand and seal, the twenty-first day of June, one thousand seven hundred and eighty, and in the fourth year of American independence."

Each party sued out a writ of error.

The defendants below assigned for error, "That the court erred in entering judgment for the plaintiff for any sum."

The plaintiffs below assigned the following errors:

1. The court erred in not determining and directing that the sum to be paid by defendants to plaintiff on releasing the judgment, should be 3170 dollars, with interest, from the 28th of February 1831, instead of the sum of 1585 dollars, with interest, from the 12th of May 1832.

2. The court erred in not directing that 'interest should be paid on the sum of 1585 dollars, from the 28th of February 1831, instead of the 12th of May 1832.

*Roberts* and *Forster*, for plaintiffs below.
*M'Cormick* and *Weidman*, for defendants.

The opinion of the Court was delivered by

KENNEDY, J.—The first question arising out of this case, as stated, is whether the deed of conveyance from Archibald M'Allister to Robert Coleman, bearing date the 10th of April 1805, can be considered a good execution of the power contained in the will of Hugh Hay, dated the 24th of May 1777, authorising his executors, in case his daughter Margaret, to whom he had devised, by a previous clause of his will, the land mentioned and transferred by the said conveyance, "to her, her heirs and assigns for ever," should die without issue, to sell the whole of his estate, of which the land formed a part; and that the money arising therefrom should, after the decease of his widow, his executors being first satisfied for their trouble, be equally divided among his brother Patrick's, and his sisters Buchanan and Morrison's sons, share and share alike.   Various objections seem to present themselves to the deed of conveyance being held an execution of the power: First, Because, although Archibald M'Allister was, at the time of his executing the deed, administrator *cum testamento annexo* of the testator, yet it appears very clearly from the face of the deed that it was not his intention, by means of it, to execute the power to sell under the will.   By his having become the husband of Margaret, the devisee of the land, and having had by her issue capable of inheriting it, he upon his wife's death, notwithstanding the previous death of her issue, became tenant for life of the land by curtesy.   His life estate thus acquired, which extended to the whole of the land, after reciting the manner in which he had become invested with it, he conveys distinctly and expressly by the deed as an interest which he had in himself without referring to the power; so that upon the ground of intention, as clearly expressed as it was possible on his part, as well

[Hay v. Mayer.]

as the principle which is uncontrovertibly settled, that where a man has both a power and an interest, and does an act even generally, and not specially, as it would seem to have been done in this case, as owner of the land, without reference to his power, the land shall pass by virtue of his ownership. 1 *Sugden on Powers* 430; 15 *Law. Lib.* 229. Then by the same duty, after showing by a recital therein, that he had also become, as he conceived, the owner of the remainder in fee of an undivided moiety of the land, he thereby conveys it also without referring to the power, and in terms which seem very clearly to exclude it. It is plain that Archibald M'Allister, at the time of executing the deed of conveyance to Robert Coleman, conceived himself invested with the absolute and indefeasible right to the remainder in fee of an undivided moiety of the land by means of the deed of conveyance made to him by James Buchanan, on the 17th of December 1804, and the deeds of conveyance made previously to Buchanan by the sons of the testator's brother Patrick Hay, and by his two sisters, Rebecca Buchanan, wife of the said James Buchanan, and Margaret Morrison, with the exception of Patrick Morrison, one of the sons of Margaret Morrison, who never parted with his right in any way, as will be shown in the sequel, to the money arising from the sale of the land, to be made under the will, in the event of the testator's daughter Margaret dying without issue. But then it is more than probable that M'Allister was made to believe, when he received the deed of conveyance to himself from Buchanan, that the three sons therein named of Margaret Morrison were all that she ever had or that were then living, because they are mentioned in such way as to raise that belief. And for the same reason that M'Allister considered himself entitled to the remainder in fee of an undivided moiety of the land at the time he sold and conveyed it to Coleman, he must have believed that Peter Gloninger was the owner of the other moiety, who derived his claim or title to it in like manner from James Buchanan. The conveyances from the nephews of the testator to Buchanan, already alluded to, embraced all the land, and were made with a view no doubt to invest him with a right to the remainder in fee in the whole of it. Mr Sugden, in his treatise on powers, vol. i, 440, says, "It is *intention* then, that in these cases governs; therefore, where it can be inferred that the power was not meant to be exercised, the court cannot consider it as executed." Here then it is almost morally impossible to infer that M'Allister, supposing him to have been capable of exercising the power in the will at the time, intended *to do so*; because, under the power, his authority to sell extended to the remainder in fee in the whole of the land, but his conveyance is limited to an undivided moiety thereof, which he undertakes to show by a recital in the deed, he had become the absolute owner of, and as such, and in fact not otherwise, he thereby intended to convey it. But it may perhaps be said, that *intention* is made the test only where the grantor has such estate or interest as he undertakes to convey, and,

at the same time, also a power to convey the same; and not to the case where he mistakingly supposes himself to have such interest; because, having shown clearly, as it may be argued, by his deed that it was his intention to transfer such interest at all events, and therefore by any means within his power, the conveyance will be referred to the power so as to render it effectual. Admitting this, then to be the rule, a second objection arises, that it was not competent for him to exercise the power without relinquishing all his right in the land and giving the whole proceeds of the sale to the nephews. By the will it is clear that the testator gave his daughter an estate tail in the land, and as long as that estate endured, it is also equally clear that he did not intend the land should be sold; but upon the determination of that estate, from a failure of issue upon her part, it would seem to have been his wish that the fee simple estate in the land should then be sold and the money arising therefrom distributed among his nephews. But before the arrival of the time when the nephews should become entitled to receive the money in possession, there is no reason to believe that it was the intention of the testator that a sale should be made. It is perfectly manifest that it was not to be sold, at any time, for the benefit of his daughter, her issue or that of any other, who might acquire an interest in it by marriage with her. It was directed to be sold for the exclusive purpose of giving to his nephews the immediate benefit of the money arising from the sale; and, when sold for that purpose, it cannot be doubted but it was his desire that it should be sold for the highest and best price that could be obtained for it. Then, in order to meet the intention of the testator and fulfil his wishes in this respect, it is clear that a sale, under the power contained in the will, could not be effected until after the death of M'Allister; because, until his life estate was determined, the full value or price of the fee simple estate in possession in it, could neither have been ascertained nor had for it. And even if it could, unless it had been paid over to them immediately, it might have been dissipated and lost to them, contrary to the design of the testator, as they could not have demanded or compelled the payment of it during the life of M'Allister, the tenant for life. This view of the question here derives support from a late decision of the court of exchequer in Meyrick *v.* Coutts, 1 *Sugden on Powers* 349–50, where the devise was to A, the testator's wife, for life, and after her death, a power to trustees to sell and pay the money amongst the children of B, who had an infant child then living, the court held that the sale could not be made till after the widow's decease. It is also sustained, I believe, by the common course and practice of mankind, so far as we have evidence of it. In Lee *v.* Vincent, *Cro. Eliz.* 26, *Co. Lit.* 113, *a,* a case pretty much like the one under consideration, where John Lee devised land to his son William in tail, and, if he died without issue, directed that his sons-in-law (having then five) should sell the land; after the

[Hay v. Mayer.]

death of the testator, one of the sons-in-law died, and then William died, leaving issue a daughter, who died afterwards without issue; then the four sons-in-law sold the land, and never thought or supposed that they could have done it before.   Two questions were made: First, whether, as the son died leaving issue, though that issue died afterwards without issue, the sale was good; and, Secondly, whether, one of the sons-in-law having died, the sale could be made by the four surviving: and both questions were decided in the affirmative.

The next question which presents itself is, did the letter of attorney, from Patrick Morrison to James Buchanan, bearing date the 21st of June 1780, authorise the latter to convey or transfer any interest which the former had in the land or right to the money which should arise from a sale thereof, made under the will of the testator?   It is very clear that the letter of attorney, according to the terms of it, has no application whatever to lands or real estate of any kind, and therefore confers no authority to sell or dispose of such estate.   It is "to ask, demand, recover or receive his lawful part of the estate of Hugh Hay, (meaning the testator,) deceased, of the county of Lancaster, &c., giving and granting thereby to his said attorney, his sole and full power and authority to take, pursue and follow such legal course for the recovery, receiving and obtaining the same, as he himself might or could do were he personally present; and upon the receipt thereof, acquittances and other sufficient discharges for him, and *in his name* to sign, seal and deliver," &c. Now nothing can be more plain than that the authority, given by the letter of attorney, extends merely to such portions of the personal estate of the testator as might be coming to the constituent. And besides, the letter of attorney contains no authority to sell or dispose of the constituent's interest in the personal estate, but to demand and receive it, and to do in his name whatever may be lawful and necessary to obtain and recover it.   The deeds, therefore, of James Buchanan, the first bearing date the 25th of February 1793, to John Duffel Hay, and the second bearing date the 17th of December 1804, to Robert Coleman, had no effect whatever upon the right or interest which Patrick Morrison had either in the real or personal estate of the testator.   And even if the letter of attorney had authorized James Buchanan to have sold and assigned the interest of Patrick Morrison in the estate of the testator, neither of the deeds purports to have been executed by Buchanan for Morrison. It is perfectly obvious that they are both executed for and in behalf of himself alone.   Patrick Morrison would, therefore, seem to have a right to demand and receive one-seventh part of the money arising from a sale to be made of the land, as directed by the will.   It certainly has not been shown that he has ever released or parted with it.   The conveyances of the other nephews to James Buchanan, may be sufficient to preclude them from ever setting up any claim to have the land sold on their account under the will; though it

[Hay v. Mayer.]

would seem from their deeds that they misapprehended very much
the nature of their claim to, or interest in, the estate.   They, in fact,
had no interest in the land; each had a right merely to receive a
certain proportion of the money that should arise from the sale
thereof, when made according to the provisions and directions of the
will.   Their claims, however, may be considered as assignable in
equity for a valuable consideration; and their deeds as sufficient to
bind and divest them, in equity at least, of their rights to any money
that could be raised from a sale of the land under this power.   That
they had no right or interest in the land to convey and transfer, is
established not only authoritatively, but satisfactorily, by the cases of
Allison *v.* Wilson's Executors, 13 *Serg. & Rawle* 330, and Morrow
*v.* Brenizer, 2 *Rawle* 188; and more especially by the clear and
conclusive reasoning of the chief justice in the latter case.

We therefore think that the court below were right in rendering
a judgment for the plaintiff, but that they erred in directing it to be
released on the payment of one thousand five hundred and eighty-
five dollars, with interest thereon from the 12th day of May 1832.
We think the plaintiff, upon the case as stated, entitled to receive
the sum of three thousand one hundred and seventy dollars, with
interest thereon from the time the judgment was rendered in the
court below; and accordingly direct that the judgment be released
on the payment of this sum to the plaintiff, and the costs of the
action in the court below, together with the costs which have
accrued on the writ of error in this court.

Judgment accordingly.